UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2022 JAN 12  AM 9: 37

CLERK

BY _____
DEPUTY CLERK

CHRISTOPHER HELALI,          )
                            )
        Plaintiff,           )
                            )
    v.                       )          Case No. 2:21-cv-00141
                            )
ZIPPORAH LEGARDE and PETER   )
SOELLER,                     )
                            )
        Defendants.          )

**OPINION AND ORDER**
**DENYING DEFENDANT ZIPPORAH LEGARDE'S MOTION TO DISMISS FOR**
**LACK OF JURISDICTION**
(Doc. 10)

Plaintiff Christopher Helali brings this defamation action against Defendants
Zipporah Legarde and Peter Soeller. Pending before the court is Ms. Legarde's motion to
dismiss for lack of subject matter and personal jurisdiction (Doc. 10).

Plaintiff, a Vermont resident, filed his Complaint on June 1, 2021, asserting three
causes of action: defamation *per se* against Ms. Legarde, a Massachusetts resident (Count
I); defamation against Ms. Legarde (Count II); and defamation *per se* against Mr. Soeller,
a Connecticut resident (Count III). (Doc. 1.) Ms. Legarde was served with the Complaint
in Massachusetts on June 7, 2021. (Doc. 2.) Mr. Soeller was served on June 23, 2021.
(Doc. 6.) Upon Plaintiff's motion, the clerk entered a default judgment against Mr.
Soeller on July 20, 2021. (Docs. 8 & 9.)

The court granted Ms. Legarde's stipulated motion for an extension of time to
answer or otherwise respond to the Complaint. (Docs. 4 & 5.) On July 26, 2021, Ms.
Legarde filed a timely motion to dismiss Counts I and II for lack of subject matter and
personal jurisdiction. (Doc. 10.) Plaintiff opposed the motion to dismiss on August 10,
2021. (Doc. 11.) The court heard oral argument on November 15, 2021, at which time it
took the matter under advisement.

Plaintiff is represented by Daniel A. Seff, Esq. Ms. Legarde is represented by Samantha V. Lednicky, Esq.

## I.      Allegations in the Complaint.

In early 2016, Plaintiff and Ms. Legarde were in a "romantic relationship" while living in the Boston area. (Doc. 1 at 3, ¶¶ 13-15.) Their relationship ended in May 2016. Ms. Legarde gave birth to their daughter, S.A.L., in 2017. Plaintiff was in Syria from January 2017 until September 2017, when he returned to the United States. He lived in Hanover, New Hampshire "for a few months" before moving to Vershire, Vermont, where he continues to reside. *Id.* at 8, ¶ 36.

When Ms. Legarde learned in December 2018 that Plaintiff had returned to the United States, "Ms. Legarde began engaging in threatening and abusive behavior toward Mr. Helali that escalated dramatically over time." *Id.* at 8, ¶ 37. This included threatening Mr. Helali; contacting his family; and contacting Dartmouth College, where he was a student, to accuse him of sexual assault in an attempt to have him expelled. Between April 22, 2019 and January 22, 2021, Plaintiff made three unsuccessful attempts to obtain a relief-from-abuse order from Vermont Superior Court. After his last attempt was denied on January 22, 2021, Ms. Legarde allegedly "embarked on a willful, malicious, relentless and vicious defamation campaign against him[.]" *Id.* at 10, ¶ 51.

Between February 6, 2021 and March 26, 2021, Ms. Legarde made six separate posts on Twitter accusing Mr. Helali of being a rapist who sexually assaulted her. From March 25, 2019 to February 16, 2021, Ms. Legarde made thirty-three statements in online posts on Facebook, Twitter, and other websites accusing Plaintiff of sexually assaulting her, abusing her and his ex-wife, abandoning his children, being dishonorably discharged from the military, committing war crimes, being anti-Semitic, and stealing money.

On or about April 17, 2019, Ms. Legarde called Ernie Kohlsaat, a Vermont resident and editor of *The Valley News*, a newspaper covering New Hampshire and Vermont for which Plaintiff had written articles. Ms. Legarde told Mr. Kohlsaat that Plaintiff had been dishonorably discharged from the military, sexually assaulted her, was anti-Semitic, abused her, and had committed theft.

2

On or about April 12, 2019, Ms. Legarde emailed Amanda Wedegis, a Vermont resident and editor of the *Vermont Journal*, for which Plaintiff had written articles. Ms. Legarde accused Plaintiff of sexual assault, anti-Semitism, abuse, and theft. In a February 4, 2020 blog post, Ms. Legarde wrote that her correspondence with Ms. Wedegis had convinced Ms. Wedegis to pull an article Plaintiff had written from its posting on the *Vermont Journal* website and prevent its publication in a print edition.

On February 20, 2020, Ms. Legarde emailed Martha Hennessy, a Vermont resident, accusing Plaintiff of sexual assault and being dishonorably discharged from the military. Also in February 2020, Ms. Legarde called Aaron Hoopes, a Vermont resident and President of the Board of Directors for Vershare, an organization in Vershire, Vermont, with which Plaintiff had worked. In the call, Ms. Legarde "tr[ied] to convince [Mr. Hoopes] to sever professional ties with [Plaintiff,]" repeated what Mr. Hoopes called "very slanderous accusations[,]" and directed Mr. Hoopes to what Mr. Hoopes described as an "anti-Chris Helali website." *Id.* at 20, ¶¶ 116-122.

In or around June 2020, Ms. Legarde contacted Vermont residents Josh Wronski and Vermont State Senator Anthony Pollina, members of the Vermont Progressive Party, and accused Plaintiff of sexual assault, anti-Semitism, abuse, and theft.

Plaintiff alleges Ms. Legarde's statements in online posts and to Vermont residents were false and defamatory. Plaintiff further alleges that "Ms. Legarde purposely directed the harmful effects of her activities at the State of Vermont in calculated attempts to cause harm to Mr. Helali in the State of Vermont" and "[a]t all relevant times, Ms. Legarde knew the emotional, reputational, employment and privacy-related tortious injuries she was intentionally causing to Mr. Helali would be felt by him in the State of Vermont." *Id.* at 18, ¶¶ 98-99. Ms. Legarde's defamatory statements allegedly "caused Mr. Helali to suffer ongoing impairment of reputation, diminished standing in the community, personal humiliation, injury and embarrassment, emotional distress and mental anguish, and professional and financial harm." (Doc. 1 at 27, ¶¶ 158, 165.)

For Count I, Plaintiff seeks an award of "presumed damages in an amount to be determined that is greater than $75,000, compensatory damages in an amount to be

3

determined that is greater than $75,000, and punitive damages in an amount to be determined that is greater than $150,000[.]" (Doc. 1 at 28, ¶ A.) For Count II, Plaintiff requests "compensatory damages in an amount to be determined that is greater than $75,000, and punitive damages in an amount to be determined that is greater than $150,000[.]" *Id.* at ¶ B.

## II.   Conclusions of Law and Analysis.

### A. Whether the Court Has Subject Matter Jurisdiction.

Ms. Legarde argues that because Plaintiff fails to specify any actual harm he suffered, his "mere mention of an amount greater than $75,000[,]" *Bernshteyn v. Feldman*, 2006 WL 2516514, at *2 (S.D.N.Y. Aug. 29, 2006), does not satisfy the amount-in-controversy requirements of diversity jurisdiction. *See* 28 U.S.C. § 1332(a)(1).

> "A party invoking the jurisdiction of the federal court has the burden of proving that it appears to a 'reasonable probability' that the claim is in excess of the statutory jurisdictional amount." *Tongkook Am., Inc. v. Shipton Sportswear Co.*, 14 F.3d 781, 784 (2d Cir. 1994) (quoting *Moore v. Betit*, 511 F.2d 1004, 1006 (2d Cir. 1975)). This burden is hardly onerous, however, for we recognize "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy." *Wolde–Meskel v. Vocational Instruction Project Cmty. Servs., Inc.*, 166 F.3d 59, 63 (2d Cir. 1999).
>
> To overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show "to a legal certainty" that the amount recoverable does not meet the jurisdictional threshold. *Id.* (quoting *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 288–289 (1938)). Our cases have set a high bar for overcoming this presumption. "[T]he legal impossibility of recovery must be so certain as virtually to negative the plaintiff's good faith in asserting the claim." *Chase Manhattan Bank, N.A. v. Am. Nat. Bank and Trust Co. of Chicago*, 93 F.3d 1064, 1070–71 (2d Cir. 1996) (quoting *Tongkook*, 14 F.3d at 785). "[E]ven where [the] allegations leave grave doubt about the likelihood of a recovery of the requisite amount, dismissal is not warranted." *Zacharia v. Harbor Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982); *see also Tongkook*, 14 F.3d at 785 ("Where the damages sought are uncertain, the doubt should be resolved in favor of the plaintiff's pleadings.").

*Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003) (alterations in original) (parallel citation omitted).

Because Plaintiff has alleged on the face of the Complaint an amount in controversy in excess of $75,000, Ms. Legarde must show "to a legal certainty" Plaintiff is unable to "meet the jurisdictional threshold." *Id.* (internal quotation marks and citation omitted). Ms. Legarde contends that Plaintiff fails to allege "some actual harm so as to warrant compensatory damages[,]" *Lent v. Huntoon*, 470 A.2d 1162, 1168 (Vt. 1983), and fails to allege any causal connection between the alleged harm and "a monetary claim for relief." (Doc. 10 at 7.) She points out that the Complaint is bereft of allegations that Plaintiff "was fired from a specific job, expelled from his graduate program at Dartmouth, or had to undergo treatment for emotional distress." *Id.* at 8.

Actual harm and monetary harm are distinct in defamation actions. Certain types of defamation, including "imputation of a crime," are actionable per se, meaning that special damages are presumed. *Lent*, 470 A.2d at 1168. "Special damages are those of a pecuniary nature, and historically they have included loss of customers or business, loss of contracts, or loss of employment[,]" but also include the loss of any "'benefit which has a more or less indirect financial value[.]'" *Id.* at 1167-68 (quoting Restatement (Second) of Torts § 575 comment b, at 198 (1977)). Because special damages are presumed for Count I, Plaintiff was not required to link the harm he suffered "to a monetary claim for relief." (Doc. 10 at 7.)

"However, even in a case (such as libel) that is actionable per se and special damages are presumed, the plaintiff must still show some actual harm to recover general, compensatory damages." *Kneebinding, Inc. v. Howell*, 2018 VT 101, ¶ 83, 208 Vt. 578, 616, 201 A.3d 326, 355. In a defamation case, actual harm "is not limited to out-of-pocket loss. Indeed, the more customary types of actual harm inflicted by defamatory falsehood include impairment of reputation and standing in the community, personal humiliation, and mental anguish and suffering." *Ryan v. Herald Ass'n, Inc.*, 566 A.2d 1316, 1321 (Vt. 1989) (quoting *Gertz v. Robert Welch, Inc.*, 418 U.S. 323, 350 (1974)). "Evidence of embarrassment or temporary damage to reputation is sufficient to show actual harm." *Kneebinding, Inc.*, 2018 VT 101, ¶ 83, 208 Vt. at 616, 201 A.3d at 355.

Ms. Legarde contends that Plaintiff's allegations of harm are "conclusory" and

5

"not pl[ed] with any specificity[.]" (Doc. 10 at 7.) But a plaintiff is required to plead
"only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v.
Twombly*, 550 U.S. 544, 547 (2007). The Complaint sets forth specific defamatory
statements made to Plaintiff's associates, which plausibly supports an allegation that he
suffered embarrassment, impairment of his reputation, and loss of standing in his
community. Plaintiff has thus plausibly pled actual harm.

The amount of compensatory damages for defamation is ultimately "within the
discretion of the fact finder and the award must stand unless grossly excessive."
*Kneebinding, Inc.*, 2018 VT 101, ¶ 84, 208 Vt. at 616, 201 A.3d at 355 (internal
quotation marks and citation omitted). "[A]ll awards must be supported by competent
evidence concerning the injury, although there need be no evidence which assigns an
actual dollar value to the injury." *Ryan*, 566 A.2d at 1321 (quoting *Gertz*, 418 U.S. at
350). Ms. Legarde has not demonstrated "to a legal certainty" that Plaintiff could not be
awarded in excess of $75,000 in compensatory damages for Count I.[1] *Scherer*, 347 F.3d
at 397 (internal quotation marks and citation omitted). Asserting a negative defense[2] is
not enough in and of itself to "deprive a federal court of jurisdiction." *Zacharia v. Harbor
Island Spa, Inc.*, 684 F.2d 199, 202 (2d Cir. 1982). "Were the law otherwise, the orderly
progress of litigation would be disrupted, and doubt and ambiguity would surround the
jurisdictional base of most diversity litigation from complaint to final judgment. Issues

---

[1] Because Plaintiff has satisfied the amount-in-controversy requirement with his claim for
compensatory damages for Count I, it is not necessary to consider punitive damages or the relief
sought for Count II. *See Colavito v. New York Organ Donor Network, Inc.*, 438 F.3d 214, 221
(2d Cir. 2006) ("Different state claims brought by a single plaintiff may be aggregated for
purposes of satisfying the amount-in-controversy requirement.") (citations omitted).

[2] A negative defense "controverts the plaintiff's prima facie case[.]" *Probatter Sports, LLC v.
Sports Tutor, Inc.*, 2015 WL 4390055, at *3 (D. Conn. July 15, 2015) (internal quotation marks
and citation omitted); *see also In re Rawson Food Serv., Inc.*, 846 F.2d 1343, 1349 (11th Cir.
1988) ("A defense which points out a defect in the plaintiff's prima facie case is not an
affirmative defense."); *Ear v. Empire Collection Auths., Inc.*, 2012 WL 3249514, at *2 (N.D.
Cal. Aug. 7, 2012) (holding "negative defenses . . . assert defects in the plaintiff's case" and that
"Rule 12(b)(6) sets forth the paradigmatic example of a negative defense: 'failure to state a claim
upon which relief may be granted'").

going to a federal court's power to decide would be hopelessly confused with the merits themselves." *Id.*

For the reasons stated above, Ms. Legarde's motion to dismiss for lack of subject matter jurisdiction is therefore DENIED.

### B. Whether the Court Has Personal Jurisdiction Over Ms. Legarde.

"On a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of showing that the court has jurisdiction over the defendant." *Metro. Life Ins. Co. v. Robertson-Ceco Corp.*, 84 F.3d 560, 566 (2d Cir. 1996). "Until an evidentiary hearing is held . . . the plaintiff need make only a prima facie showing that jurisdiction exists[.]" *Hoffritz for Cutlery, Inc. v. Amajac, Ltd.*, 763 F.2d 55, 57 (2d Cir. 1985). "In evaluating whether the requisite showing has been made, [the court] construe[s] the pleadings and any supporting materials in the light most favorable to the plaintiff[]." *Licci ex rel. Licci v. Lebanese Canadian Bank, SAL*, 732 F.3d 161, 167 (2d Cir. 2013).

"The allegations in the complaint must be taken as true to the extent they are uncontroverted by the defendant's affidavits." *MacDermid, Inc. v. Deiter*, 702 F.3d 725, 727 (2d Cir. 2012) (citation omitted). "If the parties present conflicting affidavits, all factual disputes are resolved in the plaintiff's favor, and the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *In re Terrorist Attacks on Sept. 11, 2001*, 714 F.3d 659, 673 (2d Cir. 2013) (internal quotation marks omitted). Ms. Legarde has not submitted any affidavits, and thus the Complaint's allegations are taken as true.

"In the absence of a federal statute specifically directing otherwise, and subject to limitations imposed by the United States Constitution, [the court] look[s] to the law of the forum state to determine whether a federal district court has personal jurisdiction[.]" *Brown v. Lockheed Martin Corp.*, 814 F.3d 619, 624 (2d Cir. 2016) (citing Fed. R. Civ. P. 4(k)(1)(A)). In Vermont, a court may exercise personal jurisdiction over a non-resident defendant "to the full extent permitted by the . . . Due Process Clause" of the Fourteenth Amendment. *State v. Atl. Richfield Co.*, 2016 VT 22, ¶ 10, 201 Vt. 342, 349, 142 A.3d

215, 220 (internal quotation marks omitted); *see also In re Roman Catholic Diocese of Albany, N.Y., Inc.*, 745 F.3d 30, 38 (2d Cir. 2014) ("Vermont's long-arm statute[ ] . . . reflects a clear policy to assert jurisdiction over individual defendants to the full extent permitted by the Due Process Clause.") (internal quotation marks omitted). As a result, "the first part of [the] inquiry—the interpretation of the Vermont law governing service of process—merges with the second part of the jurisdictional test: whether the court's exercise of personal jurisdiction over the defendant satisfies the requirements of due process." *Metro. Life Ins. Co.*, 84 F.3d at 567. This "analysis consist[s] of two components: the 'minimum contacts' test and the 'reasonableness' inquiry." *Bank Brussels Lambert v. Fiddler Gonzalez & Rodriguez*, 305 F.3d 120, 127 (2d Cir. 2002).

### 1. Whether Ms. Legarde Has Sufficient Minimum Contacts with Vermont.

"To determine whether a defendant has the necessary 'minimum contacts,' a distinction is made between 'specific' and 'general' personal jurisdiction." *In re Terrorist Attacks*, 714 F.3d at 673. Specific jurisdiction "exists when a forum exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's contacts with the forum[.]" *Id.* at 673-74 (alteration and internal quotation marks omitted). In contrast, general jurisdiction "is based on the defendant's general business contacts with the forum and permits a court to exercise its power in a case where the subject matter of the suit is unrelated to those contacts." *Id.* at 674 (alteration and internal quotation marks omitted). "A court deciding whether it has jurisdiction over an out-of-state defendant under the Due Process Clause must evaluate the 'quality and nature[ ]' ... of the defendant's contacts with the forum state under a totality of the circumstances test[.]" *Best Van Lines, Inc. v. Walker*, 490 F.3d 239, 242 (2d Cir. 2007) (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985)). Plaintiff argues the court has only specific personal jurisdiction over Ms. Legarde.

"[A] State may authorize its courts to exercise personal jurisdiction over an out-of-state defendant if the defendant has 'certain minimum contacts with [the State] such that the maintenance of the suit does not offend 'traditional notions of fair play and

substantial justice.'" *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 923 (2011) (second alteration in original) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). "For the purpose of establishing specific personal jurisdiction, the necessary fair warning requirement is satisfied if the defendant has purposefully directed his [or her] activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *In re Terrorist Attacks*, 714 F.3d at 674 (internal quotation marks omitted).

In order for the court to exercise specific jurisdiction, "the suit must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cnty.*, 137 S. Ct. 1773, 1780 (2017) (emphasis, internal quotation marks, and alterations omitted). There must be "'some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws.'" *Goodyear*, 564 U.S. at 924 (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958) (alteration in original)). The "'minimum contacts' analysis looks to the defendant's contacts with the forum State itself, not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). The "foreseeability of causing injury in another State," *Burger King*, 471 U.S. at 474 (emphasis omitted), will not alone suffice, and "the plaintiff cannot be the only link between the defendant and the forum." *Walden*, 571 U.S. at 285.

"The 'effects test' theory of personal jurisdiction is typically invoked where the conduct that forms the basis for the controversy occurs entirely out-of-forum, and the only relevant jurisdictional contacts with the forum are therefore in-forum effects harmful to the plaintiff." *Charles Schwab Corp. v. Bank of Am. Corp.*, 883 F.3d 68, 87 (2d Cir. 2018) (internal quotation marks and citation omitted). In *Calder v. Jones*, the Supreme Court held that there was specific jurisdiction in California over non-resident defendants who published an allegedly libelous article about a California resident. 465 U.S. 783, 789 (1984). As the Supreme Court observed:

> The crux of *Calder* was that the reputation-based "effects" of the alleged libel connected the defendants to California, not just to the plaintiff. The

> strength of that connection was largely a function of the nature of the libel
> tort. However scandalous a newspaper article might be, it can lead to a loss
> of reputation only if communicated to (and read and understood by) third
> persons. Accordingly, the reputational injury caused by the defendants'
> story would not have occurred but for the fact that the defendants wrote an
> article for publication in California that was read by a large number of
> California citizens. Indeed, because publication to third persons is a
> necessary element of libel, the defendants' intentional tort actually occurred
> in California. In this way, the "effects" caused by the defendants' article—
> i.e., the injury to the plaintiff's reputation in the estimation of the California
> public—connected the defendants' conduct to California, not just to a
> plaintiff who lived there. That connection, combined with the various facts
> that gave the article a California focus, sufficed to authorize the California
> court's exercise of jurisdiction.

*Walden*, 571 U.S. at 287-88 (citations omitted). "Exercise of jurisdiction in such circumstances 'may be constitutionally permissible if the defendant expressly aimed its conduct at the forum.'" *Charles Schwab Corp.*, 883 F.3d at 87 (quoting *Calder*, 465 U.S. at 789).

Ms. Legarde argues that (1) "[m]ere posts on the internet cannot form the basis for personal jurisdiction in Vermont[,]" (2) "statements . . . made from outside of Vermont via email and telephone to residents in Vermont cannot form the sole basis for jurisdiction[,]" and (3) "Plaintiff fails to allege that Ms. Legarde's conduct was 'expressly aimed' at Vermont." (Doc. 10 at 4, 6.) Ms. Legarde further contends that her alleged conduct after December 2018, when she learned Mr. Legarde was residing in Vermont, "cannot be considered the focal point of the alleged tort or harm suffered." *Id.* at 5.

This case falls squarely within the "effects test" theory of *Calder.* The allegedly defamatory statements Ms. Legarde made included not just online posts but defamatory statements in calls and emails to six people whom Ms. Legarde allegedly knew were Vermont residents and who were associated with Plaintiff through Vermont-based organizations. Plaintiff alleges these defamatory statements were intended to, and did, have an impact on him in Vermont. For example, Plaintiff alleges Ms. Legarde "tr[ied] to convince [Aaron Hoopes, with whom Plaintiff had worked in a Vermont grassroots organization,] to sever professional ties with Mr. Helali" and Ms. Legarde's email

correspondence with the editor of the *Vermont Journal*, Amanda Wedegis, "convinced Ms. Wedegis to: (A) stop a piece written by Mr. Helali from appearing in the print edition of the *Vermont Journal*, and (B) pull the same piece from the publication's website." (Doc. 1 at 19-20, ¶¶ 113, 118.) Ms. Legarde also allegedly contacted Mr. Wronski and Mr. Pollina, representatives of a Vermont political party, to accuse Plaintiff of sexual assault, anti-Semitism, abuse, and theft.

While simply posting on the internet may not be enough to show conduct was expressly aimed at Vermont, *see, e.g., Best Van Lines, Inc.*, 490 F.3d at 252, Plaintiff alleges Ms. Legarde targeted Vermont residents with her online posts and other communications which were intended to have harmful effects on Plaintiff in Vermont. Plaintiff alleges Ms. Legarde wrote about her correspondence with Ms. Wedegis and its harmful effects on Plaintiff in an online blog post that was itself allegedly defamatory. (Doc. 1 at 19, ¶ 113.) As the Complaint states, "Ms. Legarde purposely directed the harmful effects of her activities at the State of Vermont" and "knew the emotional, reputational, employment and privacy-related tortious injuries she was intentionally causing to Mr. Helali would be felt by him in the State of Vermont." (Doc. 1 at 18, ¶¶ 98-99.)

Ms. Legarde's alleged activities were not "random, fortuitous, or attenuated contacts[,]" or "the unilateral activity of a plaintiff[,]" but "intentional conduct by the defendant that creates the necessary contacts with the forum." *Walden*, 571 U.S. at 286 (internal quotations and citations omitted). By directly contacting and circulating her online postings and other communications to Vermont residents, the alleged tort of defamation took place in Vermont. *See Lent*, 470 A.2d at 1168 (holding publication to a third party is an element of defamation in Vermont). Moreover, effects caused by the tort, "i.e., the injury to the plaintiff's reputation in the estimation of the [Vermont] public[,] connected [Ms. Legarde's] conduct to [Vermont], not just to a plaintiff who lived there." *Walden*, 571 U.S. at 288. "In sum, [Vermont] is the focal point both of the [tortious acts] and of the harm suffered." *Calder*, 465 U.S. at 789; *see also Tamburo v. Dworkin*, 601 F.3d 693, 707 (7th Cir. 2010) ("Tortious acts aimed at a target in the forum state and

undertaken for the express purpose of causing injury there are sufficient to satisfy *Calder's* express-aiming requirement."). "[T]he reputation-based 'effects' of the alleged libel connected [Ms. Legarde] to [Vermont.]" *Walden*, 571 U.S. at 287.

Construing the facts alleged in the Complaint in the light most favorable to Plaintiff, he has established that Ms. Legarde has sufficient "minimum contacts" with Vermont for specific jurisdiction.

### 2. Whether Exercising Personal Jurisdiction Over Ms. Legarde Is Reasonable.

The reasonableness inquiry centers on whether exercising jurisdiction comports with "traditional notions of fair play and substantial justice." *Int'l Shoe Co*, 326 U.S. at 316 (internal quotation marks omitted). When examining reasonableness, the court considers:

> (1) the burden that the exercise of jurisdiction will impose on the defendant; (2) the interests of the forum state in adjudicating the case; (3) the plaintiff's interest in obtaining convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of the controversy; and (5) the shared interest of the states in furthering substantive social policies.

*Metro. Life Ins.,* 84 F.3d at 568. "While the exercise of jurisdiction is favored where the plaintiff has made a threshold showing of minimum contacts at the first stage of the inquiry, it may be defeated where the defendant presents 'a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *Id.* (quoting *Burger King*, 471 U.S. at 477).

Ms. Legarde does not challenge the reasonableness of exercising personal jurisdiction over her, nor would it be persuasive if she did so. Exercising personal jurisdiction is reasonable because (1) litigating in Vermont does not present an undue burden as she has litigated in Vermont with Mr. Helali on three previous occasions and is represented by Vermont counsel; (2) "Vermont has a manifest interest in providing its residents with a convenient forum for redressing injuries inflicted by out-of-state actors"; (3) "[t]he plaintiff's choice of forum is the best indicator of [his] own convenience"; (4) "courts generally consider where witnesses and evidence are likely to be located[,]" and

witnesses to the alleged defamation and reputational harm are in Vermont; and (5) all states have an interest in redressing defamation. *Cabot Hosiery Mills, Inc. v. 7mesh Indus. Inc.*, 2016 WL 9526678, at \*4-\*5 (D. Vt. June 8, 2016) (alteration adopted) (internal quotations and citations omitted). Considering the totality of the circumstances, this is not "a compelling case[,]" *Metro. Life Ins.*, 84 F.3d at 568 (quoting *Burger King*, 471 U.S. at 477), where exercising jurisdiction over Ms. Legarde would be unreasonable.

Because Plaintiff has made "a prima facie showing that jurisdiction exists," *Hoffritz for Cutlery, Inc.*, 763 F.2d at 57, Ms. Legarde's motion to dismiss for lack of personal jurisdiction must be DENIED.[3]

## CONCLUSION

For the foregoing reasons, Ms. Legarde's motion to dismiss for lack of subject matter and personal jurisdiction (Doc. 10) is DENIED.

SO ORDERED.

Dated at Burlington, in the District of Vermont, this __11th__ day of January, 2022.

Christina Reiss, District Judge
United States District Court

---

[3] In the alternative, Plaintiff requests jurisdictional discovery from Ms. Legarde. Because the court holds that Plaintiff has made a prima facie showing of the court's personal jurisdiction over Ms. Legarde, his request for jurisdictional discovery is DENIED AS MOOT.